UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     *Plaintiff,*<br> v.<br><br>INTERNATIONAL PAPER COMPANY and<br>TEMPLE-INLAND INC.,<br><br>     *Defendants.* | 12-cv-227 (RMC) |

## FINAL JUDGMENT

WHEREAS, Plaintiff United States of America, filed its Complaint on February 10, 2012, and Plaintiff and Defendants International Paper Company ("International Paper") and Temple-Inland Inc. ("Temple-Inland") (collectively "Defendants"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights and assets by Defendants to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the divestitures required below can and will be made and that Defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

### I. Jurisdiction

This Court has jurisdiction over the subject matter of, and each of the parties to, this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

### II. Definitions

As used in this Final Judgment:

A.   "Acquirer" or "Acquirers" means the person, persons, entity, or entities to whom Defendants divest some or all of the Divestiture Assets.

B.   "Containerboard" means linerboard and medium, the paper that is used to make corrugated boxes.

C.   "Divestiture Assets" means the Divestiture Mills and all assets relating to the Divestiture Mills, including:

(1)   all tangible assets necessary to operate, used in or for, or devoted to a Divestiture Mill, including, but not limited to, assets relating to research and development activities; all manufacturing equipment, tooling and fixed assets, real property (leased or owned), personal property, inventory, containerboard reserves, information technology

systems, office furniture, materials, supplies, docking facilities, warehouses and storage facilities, and other tangible property and all assets used exclusively in connection with the Divestiture Mills; all licenses, permits, and authorizations issued by any governmental organization relating to the Divestiture Mills; all contracts, teaming arrangements, agreements, leases (including renewal rights), commitments, certifications, and understandings, relating to the Divestiture Mills, including supply or purchase agreements; all customer lists, contracts, accounts, and credit records; all interests in, and contracts relating to, power generation; and all repair and performance records and all other records relating to the Divestiture Mills; and

(2)     all intangible assets necessary to operate, used in or for, or devoted to a Divestiture Mill, including, but not limited to, all contractual rights, patents, licenses and sublicenses, intellectual property, copyrights, technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, quality assurance and control procedures, environmental studies and assessments, design tools and simulation capability, all manuals and technical information Defendants provide to their employees, customers, suppliers, agents or licensees, and all research data concerning historic and current research and development efforts relating to the Divestiture Mills, including, but not limited to, designs of experiments, and the results of successful and unsuccessful designs and experiments.

D.     "Divestiture Mills" means the Defendants' containerboard mills in the following locations:

  (1) Temple-Inland's containerboard mill located at 2877 Scepter Road, Waverly, Tennessee 37185 (the "New Johnsonville Mill");

  (2) Temple-Inland's containerboard mill located at 5110 East Jurupa Street, Ontario, California 91761 (the "Ontario Mill"); and

  (3) either International Paper's containerboard mill located at 5936 Perkins Road, Oxnard, California 93033 (the "Port Hueneme Mill") or International Paper's containerboard mill located at 1500 Commonwealth Drive, Henderson, Kentucky 42420 (the "Henderson Mill").

E. "Divestiture Trustee" means the trustee selected by the United States and appointed by the Court pursuant to Section V of this Final Judgment.

F. "International Paper" means Defendant International Paper Company, a New York corporation with its headquarters in Memphis, Tennessee, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

G. "Monitoring Trustee" means the monitor selected by the United States pursuant to Section IX of this Final Judgment.

H. "Temple-Inland" means Defendant Temple-Inland, Inc., a Delaware corporation with its headquarters in Austin, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

### III. Applicability

A.  This Final Judgment applies to each Defendant and all persons in active concert or participation with any Defendant who receives actual notice of this Final Judgment by personal service or otherwise.

B.  If, prior to complying with Section IV or V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, Defendants shall require the purchaser(s) to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the Acquirer(s) of the assets divested pursuant to this Final Judgment.

### IV. Divestitures

A.  Defendants are ordered and directed, within 120 calendar days after the filing of the Complaint in this matter or five calendar days after notice of entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer or Acquirers acceptable to the United States in its sole discretion. To comply with this requirement, Defendants must divest (1) both the New Johnsonville Mill and the Ontario Mill, and (2) either the Port Hueneme Mill or the Henderson Mill, but not both mills. Unless a Divestiture Trustee is appointed pursuant to Section V of this Final Judgment, Defendants shall have the discretion to decide whether to divest either the Port Hueneme Mill or the Henderson Mill. The United States, in its sole discretion, may agree to one or more 30-day extensions of the 120-day time period, not to exceed sixty (60) calendar days in total, and shall notify the Court in such circumstances. Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

B.   In accomplishing the divestiture ordered by this Final Judgment, Defendants promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. Defendants shall inform any person who inquires about a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privilege or work-product doctrine. Defendants shall make available such information to the United States at the same time that such information is made available to any prospective Acquirer.

C.   Defendants shall provide prospective Acquirers and the United States with information relating to the personnel involved in the management, production, operation, and sales activities relating to the Divestiture Assets to enable the Acquirer(s) to make offers of employment. Defendants will not interfere with any negotiations by the Acquirer(s) to employ or contract with any Defendant employee whose primary responsibility is production, operations, or sales at the Divestiture Mills. Nor shall Defendants interfere with any negotiations by the Acquirer(s) to employ or contract with any of the Defendants' sales force whose responsibilities include sales of containerboard produced by the Divestiture Mills to third-party customers.

D.   Defendants shall waive all non-compete agreements for any current or former employee whom the Acquirer(s) employ(s) with relation to the Divestiture Assets.

E.   Defendants shall permit prospective Acquirers of the Divestiture Assets to (1) have reasonable access to personnel; (2) make inspections of the physical facilities; (3) have access to any and all environmental, zoning, and other permit documents and information; and

(4) have access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

    F.    Defendants shall warrant to the Acquirer(s) that the Divestiture Assets will be operational on the date of sale, that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of each asset, and that following the sale of the Divestiture Assets, Defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

    G.    Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

    H.    At the option of the Acquirer(s) and upon approval by the United States, in its sole discretion, Defendants shall enter into a transition services agreement based upon commercially reasonable terms and conditions.  Such an agreement may not exceed 12 months from the date of divestiture.  Transition services may include information technology support, information technology licensing, computer operations, data processing, logistics support, and such other services as reasonably necessary to operate the Divestiture Assets.  Defendants shall designate employees, other than Defendants' senior managers, to implement any such transition services agreement and shall establish, implement and maintain procedures and take such other steps that are reasonably necessary to prevent such employees from disclosing any confidential, proprietary, or business sensitive information of the Acquirer(s) to any other employee of Defendants, and to prevent such employees from using such information except as necessary to implement the transition services agreement.

    I.    Unless the United States otherwise consents in writing, any divestiture of a mill pursuant to Section IV, or by the Divestiture Trustee appointed pursuant to Section V of this

Final Judgment, shall include the mill and all assets relating to it, as defined in Section II.C, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the divestiture will achieve the purposes of this Final Judgment and that the Divestiture Assets can and will be used by the Acquirer(s) as part of a viable, ongoing business engaged in the production and sale of containerboard.  The divestitures, whether pursuant to Section IV or Section V of this Final Judgment,

(1) shall be made to an Acquirer or Acquirers that, in the United States' sole judgment, has or have the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the production and sale of containerboard; and

(2) shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer and Defendants give Defendants the ability to unreasonably raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere with the ability of an Acquirer to compete effectively.

J. As part of a divestiture, and at the option of the Acquirer(s), Defendants shall negotiate a transitional agreement or transitional agreements to purchase containerboard on commercially reasonable terms and conditions from the Divestiture Mills that are sold to the Acquirer(s).  Such agreement(s) shall have a term of no longer than three (3) years.  The Acquirer of a Divestiture Mill shall have the right to require Defendants to purchase up to 100 percent of the volume of containerboard supplied by the particular Divestiture Mill in 2011 to Defendants in the first year of the contract, up to 75 percent of this volume during the second year, and up to 50 percent during the third year.  Defendants may agree to purchase more

containerboard produced by the Divestiture Mill(s) than the amounts specified. The foregoing limitations and requirements do not affect Defendants' ability to (1) maintain or enter into current or future ordinary-course containerboard trade agreements with the Acquirer(s) or (2) enter into ordinary-course containerboard supply agreements with the Acquirer(s) after the end of the three-year term of the purchase agreement(s) described in this sub-paragraph.

### V.    Appointment of Trustee

A.    If Defendants have not divested some or all of the Divestiture Assets ordered by Section IV(A) of this Final Judgment within the time period specified in Section IV(A), Defendants shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the divestiture of any Divestiture Mills that Defendants have not divested (the "remaining Divestiture Assets") in the following manner:

(1)    If Defendants have not divested the New Johnsonville Mill and/or the Ontario Mill, the Divestiture Trustee will divest the mill(s).

(2)    If Defendants have not divested the Port Hueneme Mill and have not divested the Henderson Mill, the Divestiture Trustee must divest one of these mills, but not both mills. The Divestiture Trustee shall have the discretion to decide whether to divest the Port Hueneme Mill or the Henderson Mill. The Divestiture Trustee shall make this determination based on the price and terms of the divestiture and the speed with which it can be accomplished, but timeliness is paramount.

B.    After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee shall have the right to sell the remaining Divestiture Assets. The Divestiture Trustee shall have the power and authority to accomplish the divestiture to Acquirer(s)

acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of Defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture.

       C.      Defendants shall not object to a sale by the Divestiture Trustee on any ground other than the Divestiture Trustee's malfeasance. Any such objections by Defendants must be conveyed in writing to the United States and the Divestiture Trustee within 10 calendar days after the Divestiture Trustee has provided the notice required under Section VI.

       D.      The Divestiture Trustee shall serve at the cost and expense of Defendants, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of assets sold by the Divestiture Trustee and all costs and expenses so incurred. After approval by the Court of the Divestiture Trustee's accounting, including fees for its services and those of any professionals and agents retained by the Divestiture Trustee, all remaining money shall be paid to Defendants and the trust shall then be terminated. The compensation of the Divestiture Trustee and any professionals and agents retained by the Divestiture Trustee shall be reasonable in light of the value of the remaining Divestiture Assets and based on a fee arrangement providing the Divestiture Trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

E. Defendants shall use their best efforts to assist the Divestiture Trustee in accomplishing the required divestiture. The Divestiture Trustee and any consultants, accountants, attorneys, and other persons retained by the Divestiture Trustee shall have full and complete access to the personnel, books, records, and facilities of remaining Divestiture Assets, and Defendants shall develop financial and other information relevant to the remaining Divestiture Assets as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secrets or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestiture.

F. After its appointment, the Divestiture Trustee shall file monthly reports with the United States and the Court setting forth the Divestiture Trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring any interest in the remaining Divestiture Assets, and shall describe in detail each contact with any such person. The Divestiture Trustee shall maintain full records of all efforts made to divest the remaining Divestiture Assets.

G. If the Divestiture Trustee has not accomplished the divestiture ordered under this Final Judgment within six months after its appointment, the Divestiture Trustee shall promptly file with the Court a report setting forth: (1) the Divestiture Trustee's efforts to accomplish the required divestiture; (2) the reasons, in the Divestiture Trustee's judgment, why the required

divestiture has not been accomplished; and (3) the Divestiture Trustee's recommendations. To the extent the report contains information that the Divestiture Trustee deems confidential, the report shall not be filed in the public docket of the Court. The Divestiture Trustee shall at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of this Final Judgment, which may, if necessary, include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by the United States.

### VI.  Notice of Proposed Divestitures

A.  Within two business days following execution of a definitive divestiture agreement, Defendants or the Divestiture Trustee, whichever is then responsible for effecting the divestitures required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment. If the Divestiture Trustee is responsible, it shall similarly notify Defendants. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.  Within 15 calendar days of receipt by the United States of such notice, the United States may request from Defendants, the proposed Acquirer(s), any other third party, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer(s), and any other potential Acquirer(s). Defendants and the Divestiture Trustee shall furnish to the United States any additional information requested within 15 calendar days of the receipt of the request, unless the parties shall otherwise agree.

   C. Within 30 calendar days after receipt of the notice, or within 20 calendar days after the United States has been provided the additional information requested from Defendants, the proposed Acquirer(s), any third party, and the Divestiture Trustee, whichever is later, the United States shall provide written notice to Defendants and the Divestiture Trustee, if there is one, stating whether or not it approves or objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Section V(C) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer(s) or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by Defendants under Section V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII. Asset Preservation

Until the divestitures required by this Final Judgment have been accomplished, Defendants shall take all steps necessary to comply with the Asset Preservation Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestitures ordered by this Court.

## IX. Appointment of Monitoring Trustee

   A. Upon the filing of this Final Judgment, the United States may, in its sole discretion, appoint a Monitoring Trustee, subject to approval by the Court.

  B. The Monitoring Trustee shall have the power and authority to monitor Defendants' compliance with the terms of this Final Judgment and the Asset Preservation Stipulation and Order entered by this Court and shall have such powers as this Court deems appropriate. Subject to Section IX(D) of this Final Judgment, the Monitoring Trustee may hire any consultants, accountants, attorneys, or other persons reasonably necessary in the Monitoring Trustee's judgment. These individuals shall be solely accountable to the Monitoring Trustee.

  C. Defendants shall not object to actions taken by the Monitoring Trustee in fulfillment of the Monitoring Trustee's responsibilities under any Order of this Court on any ground other than the Monitoring Trustee's malfeasance. Any such objections by Defendants must be conveyed in writing to the United States and the Monitoring Trustee within 10 calendar days after the action taken by the Monitoring Trustee giving rise to the Defendants' objection.

  D. The Monitoring Trustee and any consultants, accountants, attorneys, and other persons retained by the Monitoring Trustee shall serve, without bond or other security, at the cost and expense of Defendants, on such terms and conditions as the United States approves. The compensation of the Monitoring Trustee and any consultants, accountants, attorneys, and other persons retained by the Monitoring Trustee shall be on reasonable and customary terms commensurate with the individuals' experience and responsibilities.

  E. The Monitoring Trustee shall have no responsibility or obligation for the operation of Defendants' businesses.

  F. Defendants shall assist the Monitoring Trustee in monitoring Defendants' compliance with their individual obligations under this Final Judgment and under the Asset Preservation Stipulation and Order. The Monitoring Trustee and any consultants, accountants, attorneys, and other persons retained by the Monitoring Trustee shall have full and complete

access to the personnel, books, records, and facilities relating to the Divestiture Assets, subject to reasonable protection for trade secret or other confidential research, development, or commercial information or any applicable privileges. Defendants shall take no action to interfere with or to impede the Monitoring Trustee's accomplishment of its responsibilities.

G.  After its appointment, the Monitoring Trustee shall file monthly reports with the United States and the Court setting forth the Defendants' efforts to comply with their individual obligations under this Final Judgment and under the Asset Preservation Stipulation and Order. To the extent such reports contain information that the Monitoring Trustee deems confidential, such reports shall not be filed in the public docket of the Court.

H.  The Monitoring Trustee shall serve until the divestiture of all of the Divestiture Assets is finalized pursuant to either Section IV or Section V of this Final Judgment and any transitional or purchase agreements described in Sections IV(H) and (J) of this Final Judgment have expired.

I.  If the United States determines that the Monitoring Trustee has ceased to act or failed to act diligently, the United States may appoint a substitute Monitoring Trustee in the same manner as provided in this Section.

J.  The Monitoring Trustee appointed pursuant to this Final Judgment may be the same person or entity appointed as a Divestiture Trustee pursuant to Section V of this Final Judgment.

## X.   Affidavits

A.  Within 20 calendar days of the filing of the Complaint in this matter, and every 30 calendar days thereafter until the divestiture has been completed under Section IV or V, Defendants shall deliver to the United States an affidavit as to the fact and manner of their

compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding 30 calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts Defendants have taken to solicit buyers for the Divestiture Assets and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Provided that the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Defendants, including limitations on the information, shall be made within 14 calendar days of receipt of such affidavit.

B.  Within 20 calendar days of the filing of the Complaint in this matter, Defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed pursuant to this section within 15 calendar days after the change is implemented.

C.  Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

### XI.    Compliance Inspection

A.  For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States,

including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

(1) access during Defendants' office hours to inspect and copy or, at the option of the United States, to require Defendants to provide hard copy or electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

(2) to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B. Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested, including, but not limited to, any transitional service, supply, or purchase agreements entered into between the Acquirer(s) and the Defendants pursuant to Section IV(H) or (J) of this Final Judgment.

C. No information or documents obtained by the means provided in this Section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D. If, at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendants 10 calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XII.     No Reacquisition

Defendants may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

## XIII.     Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV.     Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire 10 years from the date of its entry.

## XV.     Public Interest Determination

The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to those comments.  Based upon the record before the Court, which includes the

Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: 5/3/12

Court approval subject to procedures of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16.

_Rosemary M Collyer_
United States District Judge